**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| ADAM BERMAN,<br>c/o 1825 K Street NW, Suite 750,<br>Washington, DC 20006<br><br>          Plaintiff,<br><br>     v.<br><br>FAIRFAX COUNTY SCHOOL BOARD,<br>8115 Gatehouse Road,<br>Falls Church, VA 22042,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br><br><br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

COMES NOW Plaintiff ADAM BERMAN, by and through his undersigned counsel, and complains of Defendant FAIRFAX COUNTY SCHOOL BOARD, as follows:

**PRELIMINARY STATEMENT**

1. Defendant employed Plaintiff as a Special Education Teacher from 2016 to 2018. Plaintiff worked at Westlawn Elementary school during the 2017-2018 school year.

2. Plaintiff has Autism Spectrum Disorder ("ASD"), defined as a developmental disability which, in Plaintiff's case, substantially limits his major life activities of communication and speech.

3. During the 2017-2018 school year, Plaintiff's supervisors were Linda Ferguson (Principal) and Larry Aiello (Vice Principal). Both had notice of his disability.

4. Though Aiello and Ferguson recognized that Plaintiff's students demonstrated appropriate levels of student growth during the 2017-2018 school year, they criticized Plaintiff's mannerisms and speech—characteristics that are specific to his ASD—and decided partway through the year to terminate Plaintiff's employment, effective in June 2018.

## JURISDICTION AND VENUE

5. This Court maintains federal question jurisdiction over this action pursuant to the Rehabilitation Act, 20 U.S.C. § 791 *et seq.*

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant employed Plaintiff in Fairfax, Virginia, and the alleged unlawful acts took place in Virginia.

## THE PARTIES

7. Plaintiff resides at 7915 Jones Branch Drive, Apartment 403, McLean, Virginia, 22102. During the relevant time period, he was Defendant's employee within the meaning of the Rehabilitation Act.

8. Defendant is a school system that employs more than 500 people. Its principal office is located at 8115 Gatehouse Road, Fairfax, Virginia, 22042. During the relevant time period, Defendant was Plaintiff's employer within the meaning of the Rehabilitation Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff exhausted his administrative remedies by timely filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC"), Charge No. 570-2018-02573, on June 12, 2018.

10. Plaintiff received a Notice of Right to Sue on February 1, 2019, more than 180 days after he filed his charge.

11. Plaintiff timely files this Complaint within 90 days of receiving the Notice of Right to Sue.

## FACTS

### *Background*

12. Plaintiff has Autism Spectrum Disorder ("ASD"), which is a disability that substantially limits his major life activities of communication and speech.

13. Specifically, Plaintiff's ASD impairs his non-verbal communication skills, such as eye contact and body language, and impairs his ability to control the tone, flow, and decibel of his speech.

14. Defendant became aware of Plaintiff's disability at his time of hire because he noted it on his job application.

15. Plaintiff also discussed his ASD with Principal, Linda Ferguson, in or around October 2017.

### *Plaintiff's work history*

16. From 2013 to 2015, Plaintiff was employed by Prince George County Schools as a Special Education teacher. His performance record is excellent.

17. In 2015, Plaintiff enrolled in a Doctoral studies program at The George Washington University.

18. Defendant hired Defendant as a Special Education teacher for Timber Lane Elementary School in 2016.

19. Due to staffing needs, Plaintiff was transferred to Westlawn Elementary School in 2017.

20. The primary job duties for a Special Education teacher at Westlawn Elementary are setting strategic goals for student learning; assisting students in generating measured academic

progress; and identifying and establishing means of support for students who need additional help.

21. Plaintiff was at all times able to perform the essential functions of his job position with or without reasonable accommodations.

*Plaintiff's supervisor criticized his behavior and mannerisms caused by his disability.*

22. Soon after Ferguson met Plaintiff, she began subjecting him to unfair criticism regarding his communication skills and mannerisms that were caused by his disability.

23. For example, Ferguson criticized Plaintiff's posture, stated that he appeared "disinterested" and "stand offish," and demanded that he sit down while speaking.

24. Due to Plaintiff's ASD, he has difficulty with maintaining eye contact during conversations and has exaggerated body language, which may be misconstrued as "stand offish" behavior.

25. Ferguson also stated that Plaintiff was loud and "disruptive of the flow" of meetings and learning environments.

26. Plaintiff's ASD impacts his ability to utilize the appropriate volume and tone while speaking. Oftentimes, ASD impacts a person's ability to manage the back and forth of conversation.

27. As early as October 2017, Plaintiff shared with Ferguson that his ASD affects his body language and speech.

28. Nonetheless, Plaintiff continued to perform the essential functions of his job and voluntarily took three courses designed to improve his communication skills to address Ferguson's concerns.

29. In approximately November 2017, Ferguson accused Plaintiff of speaking "too loud" and further belittled him by providing him with a volume chart used for children.

30. The chart is designed to teach elementary-age students appropriate speaking levels.

31. Plaintiff was offended that Ferguson provided him with a volume chart designed for kindergarten and first-grade students.

32. On January 23, 2018, Ferguson accused Plaintiff of having behavior that was "distracting" to the class. She criticized that he "walked in a complete circle" while "asking in a loud voice if any child needed to go to the bathroom."

*Plaintiff's students met their goals at the mid-year point.*

33. At the beginning of each school year, teachers are required to set specific, measurable goals for their students.

34. Plaintiff adhered to these requirements and set goals for each of his six students, which were reviewed and approved by the Vice Principal, Larry Aiello, in October 2017.

35. At the mid-way point during the year, on February 9, 2018, Aiello evaluated Plaintiff's students' progress.

36. Aiello found that Plaintiff "us[ed] documented evidence to demonstrate appropriate levels of student growth."

*Aiello gave Plaintiff a negative mid-year rating because of Plaintiff's disability.*

37. Despite this positive evaluation of Plaintiff's students, Aiello issued Plaintiff a negative mid-year evaluation that contained derogatory comments about his disability.

38. The mid-year evaluation was issued on or around the same day Aiello positively rated Plaintiff's students' growth.

39. Aiello wrote in the mid-year evaluation, "Mr. Berman attempts to be mindful and not violate classroom norms" and "Mr. Berman is working to consistently utilize an appropriate tone and to avoid disruption of the environment."

40. Aiello gave Plaintiff a rating of 27 out of 40 points, which constitutes a rating of "Developing or Needs Improvement."

41. Aiello recommended a "Conditional Reappointment" for the following year.

42. As evidenced by Plaintiff's students' success, Aiello's criticism of Plaintiff's mannerisms and behavior are unjustified and discriminatory stereotypes based on his disability.

43. Plaintiff was offended by the inclusion of these comments critical of his ASD.

*Defendant issued Plaintiff a negative year-end evaluation and terminated his employment.*

44. Two months later, Ferguson decided to issue Plaintiff's year-end evaluation early, at the end of the third quarter.

45. Ferguson lowered Plaintiff's rating by 6 points from the mid-year evaluation and rated him on goals that were outside of his plan established at the beginning of the year, in violation of Defendant's policies and procedures set forth in the Teacher Performance Evaluation Program Handbook. For example, Ferguson criticized Plaintiff's work with fifth grade students, though he had no goals in place for fifth grade students during the 2017-2018 school year.

46. The evaluation also contained numerous criticisms of Plaintiff's disability such as:

    - "Mr. Berman is working to consistently utilize an appropriate tone and to avoid disruption of the environment."

- "…Mr. Berman attempts to be mindful of and not violate classroom norms. He has worked to keep his voice volumn [sic] low and not to disturb the instruction from the classroom teacher."
- "Mr. Berman interrupted the flow of the transition that the classroom teacher was attempting to accomplish. Thus, causes a loss of instructional time."

47. Ferguson recommended that Defendant not reappoint Plaintiff for the following school year. Defendant accepted the recommendation, and on June 15, 2018, Defendant sent Plaintiff a letter terminating his employment effective June 30, 2018.

48. Plaintiff sustained damages as a result of Defendant's unlawful conduct consisting of lost wages, lost benefits, front pay, front benefits, emotional distress, pain and suffering, and mental anguish.

## COUNT 1
Rehabilitation Act – Hostile Work Environment

49. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48.

50. By and through its conduct, Defendant violated the Rehabilitation Act by subjecting Plaintiff to a hostile work environment.

## COUNT 2
Rehabilitation Act – Wrongful Termination

51. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50.

52. By and through its conduct, Defendant violated the Rehabilitation Act by terminating Plaintiff's employment.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all Counts.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant on all Counts, and award Plaintiff $500,000, consisting of lost wages and benefits; compensatory damages for emotional distress, mental anguish, and pain and suffering; punitive damages; liquidated damages in an amount equal to Plaintiff's lost wages, benefits, and other compensation; an amount equal to the tax on any award; costs; attorney's fees; and any other such relief as the Court deems just and proper.

Dated: March 28, 2019                                          Respectfully Submitted,

                                                                         ___/s/ Krista Wallace____

                                                                         ALAN LESCHT AND ASSOCIATES
Krista Wallace (#91154)
1825 K Street NW, Suite 750
Washington, DC 20006
krista.wallace@leschtlaw.com
Tel:   (202) 463-6036
Fax:   (202) 463-6067
*Attorney for Plaintiff*